05-5879-cr
United States v. Keith Jones

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: April 10, 2007                             Decided: June 24, 2008)

Docket No. 05-5879-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

KEITH JONES,

*Defendant-Appellant.*

_____

Before:

LEVAL, CABRANES, and RAGGI, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Western District

of New York (David G. Larimer, *Judge*), sentencing defendant Keith Jones to 121 months'

imprisonment for unlawful possession of cocaine base in violation of 21 U.S.C. § 844(a).

Jones challenges (1) the sufficiency of the evidence supporting his conviction, and (2) the

reasonableness of his sentence.  On the second point, he submits that the district court (a)

miscalculated his Sentencing Guidelines range by relying on seized currency to determine

1

the drug quantity relevant to his possession offense; and (b) gave controlling effect to the Guidelines 100:1 ratio for assessing the relative seriousness of offenses involving powder cocaine as compared to crack cocaine, resulting in a sentence in his case that is greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553(a).

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

———————

ROBERT G. SMITH, Assistant Federal Defender (Jay S. Ovsiovitch, of counsel, *on the brief*), Rochester, New York, *for Defendant-Appellant*.

TIFFANY LEE, Assistant United States Attorney (James P. Kennedy, Assistant United States Attorney, *on the brief*), *for* Terrance P. Flynn, United States Attorney for the Western District of New York, Rochester, New York, *for Appellee*.

———————

REENA RAGGI, *Circuit Judge*:

Defendant Keith Jones appeals from a judgment of conviction entered on October 27, 2005, in the United States District Court for the Western District of New York (David G. Larimer, *Judge*), after a jury trial at which Jones was found guilty of unlawfully possessing more than five grams of a substance containing cocaine base (commonly known as "crack" cocaine) in violation of 21 U.S.C. § 844(a). Presently serving the 121-month prison term imposed in this case, Jones challenges his conviction on two grounds. First, he contends that the trial evidence was insufficient as a matter of law to establish his possession of crack cocaine. Second, he asserts that his sentence is unreasonable because the district court (a)

2

miscalculated his Sentencing Guidelines range by including in his relevant drug quantity an amount of crack cocaine derived from the currency seized at the time of Jones's arrest, which was found to represent the proceeds of a crack sale; and (b) gave controlling effect to the Guidelines 100:1 ratio for assessing the relative seriousness of crimes involving powder cocaine as compared to crack cocaine, resulting in a prison term in his case that is greater than necessary to achieve the sentencing objectives of 18 U.S.C. § 3553(a). For the reasons stated in this opinion, we reject Jones's challenge to the sufficiency of the evidence and affirm the district court judgment insofar as it convicts him for cocaine possession. We also reject Jones's challenge to the district court's finding of drug quantity. Nevertheless, because the sentencing record is ambiguous as to whether the district court's understanding of its discretion to impose a non-Guidelines sentence was as now clarified in Kimbrough v. United States, 128 S. Ct. 558 (2007) and Gall v. United States, 128 S. Ct. 586 (2007), we vacate the sentence component of the judgment and remand the case to the district court for the limited purpose of resentencing consistent with Kimbrough and Gall.

I.      **Factual Background**

Because Jones raises a sufficiency challenge to his conviction, we briefly summarize the record evidence in the light most favorable to the government. See, e.g., Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord United States v. Klein, 476 F.3d 111, 112 (2d Cir.

3

2007).

A.      The Search Leading to Jones's Arrest

On March 13, 2004, Rochester police executed a search warrant at 991 North Street, Apartment 2, authorizing the seizure of drugs and drug paraphernalia.[1]  Upon entering the subject apartment, the police encountered Keith Jones standing in the hallway.  In plain view in the living room they saw various of Jones's personal effects including a copy of his birth certificate and two photographs, one of Jones with friends, and one of Jones's daughter.  No other persons were present in the apartment, nor did it appear that anyone resided there.  Only the living room had any furniture; the two bedrooms were empty, and the kitchen contained no food.

While the officers found no signs of residency, they did find significant evidence indicating that the subject apartment was a "gatehouse," i.e., a location "used solely for the purpose of distribution of a controlled substance," in this case, crack cocaine. Trial Tr. at 16. Throughout the kitchen, which smelled of burnt acetone, officers found white residue caked onto counter tops, cooking pots, and utensils.  They collected 22 grams of this residue, which laboratory analysis confirmed to be crack cocaine.  In the kitchen, officers also found four discarded bundles of cellophane wrapping and duct tape, materials often used to package

---

[1]  On appeal, Jones does not contest the validity of this warrant, which was obtained after a confidential informant purchased gram quantities of crack cocaine at the subject premises on February 17 and 28, 2004.

kilogram quantities of powder cocaine, which can be "cooked" into crack. They further seized two boxes of baking soda, which is frequently cooked with powder cocaine to create crack. From a cabinet in the hallway where Jones had been standing, the officers seized eight rounds of ammunition, as well as a digital scale, a razor blade, and plastic sandwich bags; the last three items are all commonly used in the packaging and distribution of drugs. Finally, the officers recovered $883 in cash, of which $783 was found beneath a pillow on a living room couch and $100 was found in plain view on the bathroom floor. When confronted with this evidence of apparently substantial narcotics activity, Jones stated: "I don't know nothing about that, I'm just selling a little – a little bit. I don't know nothing about no kilo wrappers." Id. at 85.

B.    Trial

As a result of the seizures made in the subject apartment, Jones was charged in the Western District of New York with unlawful possession of ammunition, see 18 U.S.C. §§ 922(g)(1), 924(a)(2); possession of more than five grams of crack with intent to distribute, see 21 U.S.C. § 841(a)(1) & (b)(1)(B); and unlawful simple possession of the same quantity of crack, see id. § 844(a). After a three day trial, the jury found Jones guilty of simple crack possession and acquitted him on the other two charges.

C.    Sentencing

Because the jury specifically found Jones to have possessed more than five grams of crack, he was subject to an enhanced statutory sentence of "not less than 5 years and not

more than 20 years." Id.; see also, e.g., United States v. Gonzalez, 420 F.3d 111, 123-25 (2d Cir. 2005) (noting our earlier holding that drug quantity is not a "mere sentencing factor[]" but rather an "element[] of aggravated offenses," which must be decided by a jury). Insofar as the Sentencing Guidelines were relevant to the district court's determination of where within this statutory range to sentence Jones, see 18 U.S.C. § 3553(a)(4) & (5), the Probation Department, in its Pre-Sentence Report, recommended that the district court find Jones to have possessed approximately 55 grams of crack, a total derived from (1) the 22 grams of crack residue recovered from the kitchen of the subject apartment; (2) the 7 grams of crack purchased by a police informant on February 17 and 28, 2004; and (3) the 25.75 grams of crack that Jones likely sold to realize the $883 seized from the subject apartment.[2]

The district court declined to find Jones to have possessed the 7 grams of crack purchased by the confidential informant, but it otherwise followed the Probation Department's recommendations for calculating relevant drug quantity. Based on Jones's possession of approximately 47 grams of crack, the district court identified his Guidelines offense level as 30, which, with a criminal history category of III, yielded a sentencing range

___

[2] The Probation Department recommended using the price paid for crack by the confidential informant to determine the drug quantity that Jones likely sold for $883. The Department did not recommend that the court attribute any drug possession to Jones from the seized wrapping materials, which appeared consistent with four kilograms of powder cocaine.

of 121 to 151 months' incarceration.[3]

At his sentencing hearing on October 24, 2005, Jones protested the drug quantity finding. In addition, he requested a non-Guidelines sentence on the ground that the Guidelines 100:1 ratio for offenses involving powder as compared to crack cocaine overstated the seriousness of his crime and resulted in a sentencing range greater than necessary to effectuate the goals stated in 18 U.S.C. § 3553(a). In rejecting this argument, the district court offered the following explanation for its decision to sentence Jones within the Sentencing Guidelines range:

> Congress has made a determination, and the Guideline Commission has also made a determination – which I guess we can debate – that crack cocaine should be dealt with harshly.
>
> But that's what it is, and I think the court in general is wise to follow that directive and not substitute its own view. Crack cocaine, of those that receive it and get addicted to it, destroy their own lives and they do certainly affect others that commit other crimes.
> . . .
> There has been a history of drug use and abuse [by the defendant]. There was a prior conviction involving drugs – admittedly some time ago, back in 1972, that was a misdemeanor.
>
> But I guess most disturbing also, there was the robbery conviction that Mr. Jones was on parole for when this even happened. That's especially of concern.

---

[3] Had Jones been found to have possessed more than 50 grams of crack as the Probation Department recommended, his offense level would have been 32, which, with a criminal history category of III, would have resulted in a recommended sentencing range of 151 to 188 months.

So this looked like, you know, a search of a premises where drug dealing occurred. In fact, there's evidence of that, that two or three weeks before this search and arrest of Mr. Jones there were two buys out of that house for not an insubstantial quantity of drugs. And I just think all of this suggests that a guideline sentence is appropriate in this case, and I will impose such a sentence.

Sentencing Tr. at 20-21. Nevertheless, "recogniz[ing] the severity of the drug calculations for crack cocaine as opposed to powdered cocaine," id. at 22, the district court imposed a sentence at the low end of Jones's Guidelines range: 121 months' incarceration, three years' supervised release, a $750 fine, and a $100 special assessment.

Jones filed a timely notice of appeal challenging both his underlying conviction and the reasonableness of his sentence.

## II.     Discussion

### A.     Sufficiency of the Evidence to Prove Possession

Jones asserts that, "[c]ontrary to the jury's finding, the government failed to establish beyond a reasonable doubt that [he] knowingly and intentionally possessed in excess of five grams [of] a mixture or a substance containing cocaine base." Appellant's Br. at 28. Specifically, Jones contends that the government's evidence, at most, showed that he was present inside an apartment where more than five grams of cocaine base was found; it did not establish his "dominion and control over the cocaine base," facts necessary to prove possession. Id. at 29.

A defendant making a sufficiency challenge "bears a heavy burden" because the law

8

requires us to view the evidence "in the light most favorable to the government" and to uphold a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. at 391; accord United States v. Rodriguez, 392 F.3d 539, 544 (2d Cir. 2004) (internal quotation marks omitted) (emphasis in original). While Jones is certainly correct that his "mere presence" in an apartment where crack was found would be legally insufficient to establish his possession of that contraband, United States v. Rios, 856 F.2d 493, 496 (2d Cir. 1988), we conclude that the evidence introduced at trial amply supported the requisite jury finding that he "knowingly [had] the power and the intention . . . to exercise dominion and control over" the seized crack. United States v. Teague, 93 F.3d 81, 84 (2d Cir. 1996) (internal quotation marks omitted) (alteration in original); see United States v. Paulino, 445 F.3d 211, 222 (2d Cir. 2006) (stating that defendant's constructive possession over drugs found in his closet turned on his "knowledge" that "he had the physical power to place things in and remove them from the closet" and "his intent to exercise it with respect to the contraband").

Notably, Jones was the only person present in a locked apartment, in which crack residue was in plain sight in the kitchen. On more than one occasion, we have ruled that a defendant's presence alone in a room where contraband was in plain view was sufficient to support a jury inference that he exercised dominion and control over it. See United States v. Finley, 245 F.3d 199, 203 (2d Cir. 2001); United States v. Gordils, 982 F.2d 64, 71-72 (2d Cir. 1992); see also United States v. Bonham, 477 F.2d 1137, 1138 (3d Cir. 1973) ("Where

9

a person is the sole occupant of a room and has the right to exclude all others from it, it may logically be inferred that he has knowing dominion and control over objects so situated in his room that he is likely to be aware of their presence."). While Jones was arrested in the apartment hallway rather than in the kitchen, the totality of the evidence nevertheless permitted the jury to infer that, at least for the time that he was the single occupant of the apartment, he knowingly and intentionally controlled the drugs plainly visible therein. Specifically, compelling evidence established that the apartment was used for a single purpose: to package and distribute drugs. There were no signs of residency, and nothing was found in the apartment linking other persons to the premises. On the other hand, several of Jones's personal effects were in plain view, notably, his birth certificate and two photographs. These circumstances, viewed most favorably to the government, by themselves supported a jury inference that, at the time officers entered the apartment, the premises and its contents were in Jones's sole control.

Further supporting this conclusion was the currency found on the bathroom floor and concealed behind a sofa pillow. Consistent with the cash nature of retail drug trafficking, this currency strongly suggested Jones's recent involvement in one or more crack sales at the apartment. Indeed, Jones admitted that he sold "a little" crack at the same time that he tried to distance himself from the larger manufacturing activity plainly evidenced in the apartment. Trial Tr. at 85. Thus, whatever reservations the jury may have had with respect to arguments that Jones also controlled ammunition not in plain view or intended to distribute the seized

10

crack residue, the totality of the evidence certainly permitted the jury reasonably to conclude that Jones was not coincidentally present in the apartment but, rather, was there as a knowing participant in the premises' obvious drug operations and, as such, exercised sufficient dominion and control over drugs plainly visible therein to be guilty of their possession.

Accordingly, we reject as without merit Jones's sufficiency challenge to his conviction for crack possession.

B.      Reasonableness Challenge to Sentence

1.      Standard of Review

In the aftermath of United States v. Booker, 543 U.S. 220 (2005), we review sentences only for "reasonableness," id. at 262, a deferential standard limited to identifying abuse of discretion regardless of whether a challenged sentence is "inside, just outside, or significantly outside the Guidelines range," Gall v. United States, 128 S. Ct. at 591; see Kimbrough v. United States, 128 S. Ct. at 576; United States v. Verkhoglyad, 516 F.3d 122, 127 (2d Cir. 2008). Reasonableness review proceeds in two steps: first, we must "ensure that the district court committed no significant procedural error," and second, if we find the sentence to be "procedurally sound," we must "take into account the totality of the circumstances" and "consider the substantive reasonableness of the sentence." Gall v. United States, 128 S. Ct. at 597; see United States v. Williams, 524 F.3d 209, 214 (2d Cir. 2008).

In Gall, the Supreme Court noted various procedural errors that can render a sentence unreasonable: (1) "failing to calculate (or improperly calculating) the Guidelines range," (2)

11

"treating the Guidelines as mandatory," (3) "failing to consider the [18 U.S.C.] § 3553(a) factors," (4) "selecting a sentence based on clearly erroneous facts," or (5) "failing to adequately explain the chosen sentence – including an explanation for any deviation from the Guidelines range." Gall v. United States, 128 S. Ct. at 597. In the absence of any such procedural error, Gall instructs that substantive reasonableness reduces to a single question: "whether the District Judge abused his discretion in determining that the § 3553(a) factors supported" the sentence imposed. Id. at 600 (describing inquiry as the "only question for the Court of Appeals" where "the District Court committed no procedural error"). While these principles are not new to reasonableness analysis in this circuit, Gall, Kimbrough, and Rita v. United States, 127 S. Ct. 2456 (2007), provide useful instruction for their application.

With respect to the second procedural error identified in Gall — which is relevant to this appeal, see infra Part II.B.3 (discussing district court's reliance on Guidelines 100:1 ratio for powder cocaine relative to crack cocaine) — the Supreme Court has now explained that, as a necessary corollary to the constitutional proscription on treating the Guidelines as mandatory, sentencing courts "may not presume that the Guidelines range is reasonable." Gall v. United States, 128 S. Ct. at 596-97; see Rita v. United States, 127 S. Ct. at 2465 (noting that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"). In short, while a sentencing court is statutorily obligated to give fair consideration to the Guidelines before imposing sentence, see 18 U.S.C. § 3553(a)(4); United States v. Williams, 524 F.3d at 215 (holding district court committed

12

procedural error by using "sentence for which the case could have been plea-bargained in Westchester County," rather than Guidelines range, as "initial benchmark"), in the end, it must make an "individualized assessment" of the sentence warranted by § 3553(a) "based on the facts presented," Gall v. United States, 128 S. Ct. at 597. Indeed, the sentencing court's claim on our deference derives, in part, from its unique ability to make such assessments. As Gall emphasized, district courts have two distinct institutional advantages over appellate courts in determining what sentence best achieves the purposes of § 3553(a) in a given case: (1) district courts impose scores of sentences each year, and (2) a district judge is in a superior position to find facts relevant to sentencing and to judge their import under § 3553(a). See id. at 597-98. In the latter respect, district courts hear all the evidence relevant to sentencing, make credibility determinations, and interact directly with the defendant. See id. at 597. In the process, they "gain[] insights not conveyed by the record" that are often critical to identifying a just sentence. Id. (internal quotation marks omitted).[4]

Gall and Rita further instruct that the same constitutional concerns that proscribe district courts from according a presumption of reasonableness to Guidelines ranges prohibit

_____

[4] The last point may well have been undervalued in a mandatory Guidelines regime focused on identifying and quantifying every possible sentencing factor. Even before Booker, however, the Supreme Court recognized the importance of district court discretion to identify those cases that did not fall within the Guidelines' "heartland." See Koon v. United States, 518 U.S. 81, 98-99 (1996). Such recognition acknowledges that, in imposing sentences, district judges work with the benefit of insights and judgments – into persons, crimes, and the communities where crimes occur – that are not less valuable simply because they are sometimes unquantifiable.

13

reviewing courts from presuming the unreasonableness of non-Guidelines sentences. See id.;

Rita v. United States, 127 S. Ct. at 2466-67 (explaining why appellate courts may presume reasonableness of Guidelines sentences but may not presume unreasonableness of non-Guidelines sentences). This admonition informs appellate review of all sentencing challenges. See Kimbrough v. United States, 128 S. Ct. at 577 (Scalia, J., concurring) (observing that Sixth Amendment prohibits appellate courts from applying rules or standards of review that effectively place a "thumb on the scales" in favor of Guidelines sentences).[5]

For example, in reviewing a district court's explanation of a sentence for reasonableness at either the procedural or substantive step of analysis, Gall holds that an appellate court may not demand "extraordinary" circumstances to justify non-Guidelines sentences. Gall v. United States, 128 S. Ct. at 595. Nor may it employ a "rigid mathematical

_____

[5] Like the Sixth Circuit, sitting en banc in United States v. Vonner, we think "[o]ne theme runs through" Rita, Gall, and Kimbrough:

Booker empowered district courts, not appellate courts and not the Sentencing Commission. Talk of presumptions, plain error and procedural and substantive rules of review means nothing if it does not account for the central reality that Booker breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them. If there is a pattern that emerges from Rita, Gall, and Kimbrough, it is that the district court judges were vindicated in all three cases . . . . [T]he central lesson from these decisions [is] that district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them.

516 F.3d 382, 392 (6th Cir. 2008) (en banc).

14

formula" based on "the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." Id. Such review standards are not simply unhelpful to identifying unreasonable sentences; they are constitutionally suspect, "com[ing] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines." Id.

These principles are necessarily borne in mind in considering Gall's "uncontroversial" observation that a major variance from the Guidelines range "should be supported by a more significant justification than a minor one." Id. at 597. Such a requirement does not presume that the non-Guidelines sentence is unreasonable. See Irizarry v. United States, 128 S. Ct. —, —, 2008 WL 2369164, *4 (June 12, 2008) ("Any expectation subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable guideline range did not survive our decision in [Booker]."). It simply recognizes that reasonableness review must "take into account the totality of the circumstances," which necessarily includes "the extent of any variance from the Guidelines range." Id. To the extent that the Guidelines "seek to embody the § 3553(a) considerations," and reflect at least "a rough approximation of sentences that might achieve § 3553(a)'s objectives," Rita v. United States, 127 S. Ct. at 2464-65, the more a sentence varies from the Guidelines range, the less obvious it may be to a reviewing court why the district court concluded that such a variance was necessary to comply with § 3553(a). In these circumstances, the district court's identification of a significant justification "assures reviewing courts (and the public) that the

15

sentencing process is a reasoned process." Id. at 2469.

The Supreme Court has clearly signaled that district courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence.[6] In Kimbrough, it specifically rejected an argument that had found some favor in appellate courts, including our own, see, e.g., United States v. Castillo, 460 F.3d 337 (2d Cir. 2006) (discussed infra at Part II.B.3.b), that a district court could not rely on a policy disagreement with the Sentencing Commission to explain a non-Guidelines sentence. See Kimbrough v. United States, 128 S. Ct. at 570 (citing government's acknowledgment that "courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines" (alteration in original)); cf. Rita v. United States, 127 S. Ct. at 2465 (observing that district court may consider arguments that "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). While the Court observed that "closer review

---

[6] Such broad discretion comports with 18 U.S.C. § 3661, which states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Even before Booker, the Supreme Court specifically cited § 3661 in concluding that the law afforded reviewing courts no basis "to invent a blanket prohibition against considering certain types of evidence at sentencing." United States v. Watts, 519 U.S. 148, 152 (1997); see also United States v. Concepcion, 983 F.2d 369, 387 (2d Cir. 1992) ("It had been established long before the advent of the Guidelines that the sentencing court could properly take into account any information known to it."). The only limit pertains to invidious factors. See, e.g., United States v. Kaba, 480 F.3d 152, 156 (2d Cir. 2007) ("A defendant's race or nationality may play no adverse role in the administration of justice, including at sentencing." (internal quotation marks omitted)).

16

may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case," Kimbrough v. United States, 128 S. Ct. at 574, it appeared to limit this possibility to cases involving Guidelines based on the Commission's traditional empirical and experiential study, see id. at 575 (noting that, because district court's disagreement was with crack Guidelines that were not based on empirical and experiential study, case "present[ed] no occasion for elaborative discussion" of possible "closer review" of district court's explanation for sentence).[7]

---

[7] Kimbrough and Gall both emphasize that, after Booker, the Guidelines' claim on judicial respect derives from the fact that the Sentencing Commission "has the capacity courts lack" to frame Guidelines on the basis of "empirical data and national experience, guided by a professional staff with appropriate expertise." Kimbrough v. United States, 128 S. Ct. at 574 (internal quotation marks omitted); see Gall v. United States, 128 S. Ct. at 594 (noting that, to the extent that the Guidelines represent "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," the sentencing judge "must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications"); see also Rita v. United States, 127 S. Ct. at 2464-65 (observing that, in light of the Commission's "ongoing" revisions to the Guidelines, based on review of criminal sentences and "advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others[,] . . . . it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives").

At the same time, however, the Court recognized that, to the extent certain Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," that fact could obviate the need for closer review of non-Guidelines sentences based on policy disagreements in "mine-run" cases. Kimbrough v. United States, 128 S. Ct. at 575; see also Gall v. United States, 128 S. Ct. at 594 n.2 (recognizing that "not all of the Guidelines are tied to . . . empirical evidence" and referencing Kimbrough for "effect" of this fact "on a

17

In sum, these references to "closer review" and "significant justification" cannot be construed as a signal to view non-Guidelines sentences with inherent suspicion or to establish a higher standard of review than abuse of discretion for some non-Guidelines sentences. While an appellate court may certainly consider the extent of a Guidelines variance as well as any policy concerns informing it in reviewing the totality of circumstances bearing on the reasonableness of a challenged sentence, what it may not do is review the district court's fact finding for anything other than clear error. See Gall v. United States, 128 S. Ct. at 600 (identifying error in Court of Appeals' employment of "analysis that more closed resembled de novo review of the facts"). Nor may it reject a variance simply because the resulting sentence differs from that which the reviewing court might have imposed if it had been

district judge's authority to deviate from the Guidelines range"); United States v. Verkhoglyad, 516 F.3d at 129 n.4 (recognizing, without deciding, that sentencing variance from probation Guidelines formulated without reference to empirical and experiential evidence might not warrant closer review); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements (1987) (noting that the initial version of the Guidelines was based on "average current practice" and so "[did] not duplicate current practice and [was] not intended to do so"); Stephen Breyer, Federal Sentencing Guidelines Revisited, 11 Fed. Sent'g Rep. 180, 181 (1999) (observing that the Commission's efforts to set sentencing ranges that accurately reflected the objectives of § 3553(a) were hampered by the Commission's "lack[] of empirical data that [(1)] convincingly linked length of sentence to the prevention of crime." or (2) "permit[ted] it confidently to assert that a certain amount of punishment would lead to 'rehabilitation'"); Illene Nagel, Structuring Sentencing Discretion: The New Federal Sentencing Guidelines, 80 J. Crim. L. & Criminology 883, 923 (setting forth, based on the author's experience as a member of the U.S. Sentencing Commission, the various reasons why the "[sentencing] ranges promulgated in the first iteration" of the Guidelines did not "correlat[e] [with] the past practice data reviewed" by the Commission).

entrusted with that responsibility.  See id. at 597 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

Sentencing is not, after all, a precise science.  See generally Irizarry v. United States, 128 S. Ct. at ---, 2008 WL 2369164 at *5 (noting that "[s]entencing is a fluid and dynamic process" (internal quotation marks omitted)).  Rarely, if ever, do the pertinent facts dictate one and only one appropriate sentence.  Rather, the facts may frequently point in different directions so that even experienced district judges may reasonably differ, not only in their findings of fact, but in the relative weight they accord competing circumstances.  Such reasonable differences necessarily mean that, in the great majority of cases, a range of sentences — frequently extending well beyond the narrow ranges prescribed by the Guidelines — must be considered reasonable.

This is not to suggest that district courts have a blank check to impose whatever sentences suit their fancy.  The statutory mandate of § 3553 — which includes the requirement for respectful consideration of the Guidelines, see id. § 3553(a)(4) — necessarily channels district court sentencing discretion.  Nevertheless, assuming that a district court satisfies its § 3553 obligations and commits no other procedural error, the duty of a reviewing court is not to identify the "right" sentence but, giving due deference to the district court's exercise of judgment, to determine whether the sentence imposed falls within the broad range that can be considered reasonable under the totality of the circumstances.  See

19

Gall v. United States, 128 S. Ct. at 597 (holding that appellate court "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the [challenged] variance"). In short, in determining substantive reasonableness, a reviewing court will set aside only those outlier sentences that reflect actual abuse of a district court's considerable sentencing discretion.[8]

With these review principles in mind, we consider Jones's particular challenges to the reasonableness of his sentence.

### 2. Miscalculation of the Guidelines

Jones contends that his sentence is procedurally unreasonable because the district court committed significant procedural error by miscalculating his Sentencing Guidelines range. See Gall v. United States, 128 S. Ct. at 597; United States v. Toohey, 448 F.3d 542, 546 (2d Cir. 2006). Specifically, Jones faults the district court for including within the drug quantity used to determine his Guidelines base offense level an amount of crack cocaine that could have been purchased with the cash seized at the time of Jones's arrest. He further submits that more than a preponderance of the evidence was necessary to permit an inference

---

[8] District courts' exercise of their discretion in imposing non-Guidelines sentences is critical to the ongoing development of responsible Guidelines. As the Supreme Court noted in Rita, the district court's "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors, can provide relevant information to both the court of appeals and ultimately the Sentencing Commission. The reasoned responses of these latter institutions to the sentencing judge's explanation should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw." Rita v. United States, 127 S. Ct. at 2469.

of drug possession to be drawn from the seized money. We are not persuaded by these arguments.

### a. Drug Quantity May Be Inferred from Cash Proceeds of Drug Trafficking

A Sentencing Guidelines calculation must begin with an identification of the defendant's relevant conduct, which in the case of a drug possession offense includes the quantity of drugs controlled by the defendant, whether as a principal or as an aider and abettor. See generally United States v. Shonubi, 103 F.3d 1085, 1088-89 (2d Cir. 1997) (discussing Guidelines' focus on "relevant conduct," rather than "convicted conduct"); U.S.S.G. § 1B1.3 (discussing relevant conduct). The quantity of drugs attributable to a defendant is a question of fact. As such, if the evidence – direct or circumstantial – supports a district court's preponderance determination as to drug quantity, we must sustain that finding. Further, in reviewing a legal challenge to a quantity finding we are mindful of the Guidelines' express instruction that where there has been no seizure of narcotics, or where the quantity seized does not reflect the true scale of the offense, a sentencing judge should "approximate" the relevant drug quantity, see id. § 2D1.1, Application Note 12, based on a preponderance of the evidence, see id. § 6A1.3 (Policy Statement), comment.

Consistent with this Guidelines principle, we reject defendant's argument that, as a matter of law, drug quantity cannot be inferred from seized currency. We hold that where, as in this case, seized currency appears by a preponderance of the evidence to be the proceeds

21

of narcotics trafficking, a district court may consider the market price for the drugs in which the defendant trafficked in determining the drug quantity represented by that currency. While this appears to be the first time that we specifically approve such a drug quantity inference in a published opinion, the conclusion is hardly novel as evidenced by our summary approval of such cash-based drug quantity findings in a number of non-precedential orders. See United States v. Smith, 253 F. App'x 69, 71 (2d Cir. 2007) (affirming sentence where district court converted "$4,500 in cash seized from [the defendant's] bedroom wastepaper basket to an equivalent drug amount of 45 grams of [crack]" for purposes of U.S.S.G. § 2D1.1); United States v. Nelson, No. 97-1162, 1997 WL 774409, *2 (2d Cir. Dec. 17, 1997) (noting defendant's possession of "large sums of cash which can be converted to drug quantities for purposes of sentencing").

Indeed, our eight sister circuits that have addressed the issue have uniformly concluded that a sentencing court may derive drug quantity from seized currency that appears to be the proceeds of illegal trafficking. See United States v. Keszthelyi, 308 F.3d 557, 576-78 (6th Cir. 2002) (upholding conversion of currency to drug quantity and observing that "government must prove by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio – i.e., the price per unit of drugs"); United States v. Otis, 127 F.3d 829, 836 (9th Cir. 1997) (upholding conversion of currency to drug quantity where "evidence connect[ed] the money to drug-related activities" and "[t]here was evidence of the going rate for cocaine in Chicago which supported the

22

conversion rate"); United States v. Johnston, 127 F.3d 380, 403 (5th Cir. 1997) (upholding district court's "conversion of $90,000 into five kilograms of cocaine"); United States v. Tokars, 95 F.3d 1520, 1542 (11th Cir. 1996) (holding "that money attributable to the drug transactions may be converted to the equivalent amount of drugs for purposes of determining the drug quantity"); United States v. Rios, 22 F.3d 1024, 1026-27 (10th Cir. 1994) (same); United States v. Watts, 950 F.2d 508, 514 (8th Cir. 1991) (same); United States v. Hicks, 948 F.2d 877, 881-82 (4th Cir. 1991) (same); United States v. Gerante, 891 F.2d 364, 368-70 (1st Cir. 1989) (same).

We now formally reach the same conclusion and hold that a district court may use money attributable to drug transactions to determine the quantity of drugs relevant to sentencing.

> b.    No Higher Standard than Preponderance of the Evidence Is Necessary to Infer Drug Quantity from Cash Proceeds

Jones argues that, if seized cash is used to determine drug quantity, our decision in United States v. Shonubi demands that the inference be supported by more than a preponderance of the evidence. See Appellant's Br. at 26. His argument misreads our precedent. In Shonubi, we observed that, because the then-mandatory Guidelines system "prescribes punishment for unconvicted conduct at the same level of severity as convicted conduct," courts must "proceed carefully" in establishing standards for proving relevant conduct, United States v. Shonubi, 103 F.3d at 1089, and should look for "specific evidence"

23

of any unconvicted drug quantity that "will significantly enhance a sentence," id. at 1089-90 (citing United States v. Gigante, 94 F.3d 53, 56-57 (2d Cir. 1996)). But, as we subsequently clarified in United States v. Cordoba-Murgas, 233 F.3d 704 (2d Cir. 2000), the quoted language from Shonubi "was merely dictum. In light of this Court's continual application of the preponderance of the evidence standard, it is incorrect to construe the Shonubi language as authorizing the use of a higher standard of proof," id. at 708; accord United States v. Bennett, 252 F.3d 559, 565 (2d Cir. 2001) (reiterating that Shonubi standards statement was dictum).

Jones's argument for a more rigorous standard of proof not only lacks support in our precedent, but is precluded by the Supreme Court's decision in United States v. Watts, 519 U.S. 148. Watts held that even acquitted conduct may be treated as relevant for purposes of Guidelines calculations "so long as that conduct has been proved by a preponderance of the evidence." Id. at 157; accord United States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005). Of course, after Booker, there is even less reason for judicial imposition of enhanced standards of proof to the determination of Guidelines ranges that are, in the end, only advisory. See generally United States v. Garcia, 413 F.3d 201, 220 n.15 (2d Cir. 2005) (holding that "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker"); United States v. Vaughn, 430 F.3d at 525 (same).

Accordingly, like our sister circuits, we hold that a district court may equate seized currency to a quantity of drugs, at least when a preponderance of the evidence indicates that

24

the currency was used to purchase drugs.

      c.  <u>The Record Supports the District Court's Preponderance Finding that Jones Possessed a Quantity of Crack Commensurate with the Cash Seized at the Time of His Arrest</u>

Because a district court's determination of drug quantity is a finding of fact, our review is limited to clear error. See United States v. Powell, 404 F.3d 678, 681 (2d Cir. 2005). We identify no such error in the district court's preponderance finding that the $883 recovered from the subject apartment indicated Jones's prior possession and sale of approximately 25.75 grams of crack cocaine in addition to the 22 grams of crack actually seized from the apartment.

First, the district court reasonably found that Jones possessed the seized money. Jones contends that no such inference was possible given the lack of "specific evidence, such as fingerprints or a statement," indicating his knowledge or control of the currency. Appellant's Br. at 27. For essentially the same reasons that we rejected Jones's sufficiency challenge to the jury's finding beyond a reasonable doubt that he possessed the seized drugs, we reject his challenge to the sentencing court's preponderance finding that he possessed the seized cash. Although Jones was not arrested with $883 in his hands nor discovered in the living room or bathroom where these monies were found, the cash – minimally concealed behind a sofa pillow and in plain view on a bathroom floor – was certainly readily accessible to him as the sole occupant of the subject premises. The only use of the uninhabited premises was plainly

25

crack trafficking, and Jones admitted that he sold crack. Indeed, when the curious location of the money is considered in light of this obvious and singular use of the premises, it appears not only more likely than not that Jones knew of the seized money, but also more likely than not that Jones had recently acquired the money in the course of crack transactions conducted in the apartment in which Jones was arrested. See generally United States v. Rizzo, 349 F.3d 94, 98 (2d Cir. 2003) ("At sentencing, disputed factual allegations must be proven by the government by a preponderance of the evidence — meaning they are more likely than not true." (internal citation omitted)). Under these circumstances, the district court acted well within its discretion in making a preponderance finding that Jones possessed the seized money.

Second, the district court reasonably found that the seized money represented the proceeds of drug trafficking. Indeed, Jones does not seriously suggest otherwise, nor could he given evidence that (1) the subject apartment served only as a crack "gatehouse," uninhabited and essentially unfurnished except with items that facilitated the manufacture and distribution of crack; (2) significant crack residue was plainly visible throughout the kitchen, but no crack bundles were found on the premises despite the presence of discarded packaging and the scent of burnt acetone, circumstances strongly suggesting recent crack manufacture; (3) crack had been purchased at the subject apartment a few weeks earlier by a confidential informant; (4) Jones admitted selling crack; (5) at the time of the seizure, Jones had no other means of employment that could be a legitimate source of the money; and (6)

26

the money was found concealed behind a sofa pillow and in plain view on the bathroom floor. These circumstances, viewed in the light most favorable to the government, permitted the sentencing court to find that the seized monies were, more likely than not, narcotics proceeds.

Third, the district court reasonably found that the seized $883 would have purchased 25.75 grams of crack cocaine. It based this calculation on the price the government's confidential informant had paid for crack cocaine recently purchased from the subject premises. See United States v. Rios, 22 F.3d at 1026-27 (upholding conversion of currency to drug quantity based upon price previously paid by confidential informant to defendant for drugs). Because the confidential informant had twice purchased 3.5 grams of crack cocaine for $120, the district court reasonably found that Jones would have been able to sell crack for approximately $34 per gram, so that the seized $883 evidenced Jones's prior possession and sale of 25.75 grams of crack.

In sum, the district court did not clearly err in finding that a preponderance of the evidence established Jones's possession of both the 22 grams of crack actually seized from the subject apartment and an additional 25.75 grams of crack of which the seized $883 were the likely proceeds. Based on these findings, it correctly concluded that Jones's possession of a total of approximately 47 grams of crack resulted in a Guidelines base offense level of 30, see U.S.S.G. § 2D1.1 (providing for level 30 to apply to crimes involving 35 to 50 grams of cocaine base), which, coupled with a criminal history category of III, provided a

27

Guidelines sentencing range of 121 to 151 months' incarceration. Accordingly, we reject as without merit Jones's argument that his sentence is infected by any procedural error in the calculation of his Guidelines range.

### 3. Reliance on the Guidelines 100:1 Ratio to Determine the Seriousness of Jones's Crack Possession

#### a. Defendant's Reasonableness Challenge

Jones asserts that, even if the district court properly calculated his Guidelines range, his sentence, although at the bottom of that range, was still "greater than necessary" to reflect the seriousness of his crime or to serve the other sentencing objectives specified in § 3553(a). As a challenge to the substantive reasonableness of a sentence, such an argument confronts significant hurdles. This court has stated that, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006); accord United States v. Eberhard, 525 F.3d 175, 179 (2d Cir. 2008). Moreover, in Rita v. United States, the Supreme Court observed that "where [the sentencing judge] and [Sentencing] Commission both determine that the Guidelines sentence[] is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its 'not greater than necessary' requirement)." 127 S. Ct. at 2467. We do not reach Jones's substantive reasonableness challenge, however, because we identify a preliminary procedural concern that warrants remand.

28

Jones submits that the district court committed significant procedural error by giving determinative effect to the Guidelines because they reflected a policy determination by both Congress and the Commission that crimes involving one gram of crack cocaine should be viewed to be as serious as those involving one hundred grams of powder cocaine. See U.S.S.G. § 2D1.1 (2006). To address this argument, we must first briefly review the crack Guidelines and recent precedent relevant to their application by district courts.

b.      The Crack Guidelines

Because the history and provenance of the crack Guidelines have been exhaustively described by our court in United States v. Castillo, 460 F.3d at 344-51, and by the Supreme Court in Kimbrough v. United States, 128 S. Ct. at 566-69, we here highlight only those parts relevant to our decision.

In the Anti-Drug Abuse Act of 1986, Congress created "a two-tiered scheme of five- and ten-year mandatory minimum sentences for drug manufacturing and distribution offenses." Id. at 566. In distinguishing the "major" traffickers who would be subject to the ten-year term from the "serious" traffickers who would be eligible for five-year terms, Congress relied exclusively on "the weight of the drugs involved in the offense." Id. at 566-67. Treating one gram of crack as the equivalent of 100 grams of powder cocaine, the Act applies a five-year mandatory minimum term to any defendant accountable for five grams of crack or 500 grams of powder, see 21 U.S.C. § 841(b)(1)(B)(ii), (iii); and a ten-year

mandatory minimum term to any defendant accountable for 50 grams of crack or 5,000 grams of powder, see id. § 841(b)(1)(A)(ii), (iii).  In developing Guidelines for drug offenses, the Sentencing Commission "employed the 1986 Act's weight-driven scheme," so that the drug quantity table in U.S.S.G. § 2D1.1(c), inter alia, mimicked the Act's 100:1 ratio for offenses involving cocaine powder and crack cocaine.  Kimbrough v. United States, 128 S. Ct. at 567 (observing that "[t]he statute itself specifies only two quantities of each drug, but the Guidelines go further and set sentences for the full range of possible drug quantities using the same 100-to-1 quantity ratio" (internal quotation marks omitted)).

Over time, the Commission that authored § 2D1.1(c) became one of its leading critics.  See id. at 568 ("Based on additional research and experience with the 100-to-1 ratio, the Commission concluded that the disparity fails to meet the sentencing objectives set forth by Congress." (internal quotation marks omitted)).  After failing in several attempts to amend the Guidelines 100:1 ratio, see United States v. Castillo, 460 F.3d at 346-50 (describing Commission efforts), the Commission recently implemented an across-the-board two-point reduction of the base offense level for crack offenses effective November 1, 2007.  See Amendments to the Sentencing Guidelines for the United States Courts, 72 Fed. Reg. 28,571-28,572 (2007); see also Kimbrough v. United States, 128 S. Ct. at 569 (noting that "[t]his modest amendment yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder").  On December 11, 2007, the Commission unanimously voted to apply this amendment retroactively, so that defendants sentenced under

30

the former crack Guidelines are now eligible for a reduction in their sentences. See United States v. Regalado, 518 F.3d 143, 150 (2d Cir. 2008); U.S.S.G. § 1B1.10(c); see also 18 U.S.C. § 3582(c)(2) ("[I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment . . . .").

c.     Precedent Relevant to Post-*Booker* Application of the Crack Guidelines

Jones submits that the district court felt itself bound by the Guidelines' assessment of the relative seriousness of crimes involving crack cocaine as compared to powder cocaine, so that it never made its own "individualized assessment" of the seriousness of his crime. Gall v. United States, 128 S. Ct. at 597. If this was, in fact, the district court's view, it was subsequently mandated by this court. In United States v. Castillo, we ruled that "district courts do not have the authority to reject unilaterally the 100:1 ratio on policy grounds." 460 F.3d at 340. We reiterated the limitation in United States v. Park: "[I]t would be error for a sentencing judge to impose a non-Guidelines sentence on the basis of a disagreement with Congress's policy judgment regarding the 100:1 ratio." 461 F.3d 245, 250 (2d Cir. 2006).

The Supreme Court concluded otherwise in Kimbrough, effecting a sea change in our jurisprudence. See United States v. Regalado, 518 F.3d at 147 (observing that "until Kimbrough and Gall, this Circuit tended to discourage district courts from deviating from the

31

crack cocaine Guidelines"); see also United States v. Jimenez, 512 F.3d 1, 8 (1st Cir. 2007) ("The legal landscape anent the crack/powder disparity changed significantly on December 10, 2007, when the Supreme Court held that a district court can deviate from a properly calculated guideline sentencing range on the basis of that disparity."). In Kimbrough, the Court rejected the Justice Department's argument that "Guidelines adopting the 100-to-1 ratio are an exception to the general freedom that sentencing courts have to apply the § 3553(a) factors . . . . because the ratio is a specific policy determination that Congress has directed sentencing courts to observe." Kimbrough v. United States, 128 S. Ct. at 570 (internal quotation marks, brackets, and citations omitted). It ruled that, in fashioning "an appropriate sentence," a sentencing court must weigh the "§ 3553(a) factors and any unwarranted disparity created by the crack/powder ratio itself." Id. at 574. The Court thus concluded that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Id. at 575.

Recognizing that our precedent may have unduly restricted district courts in their ability to assess for themselves the seriousness of particular crack offenses, we recently fashioned a remand mechanism for crack sentencing cases on appeal at the time Kimbrough was decided. See United States v. Regalado, 518 F.3d at 148-49. We ruled that even "[w]here a defendant has not preserved the argument that the sentencing range for the crack cocaine offense fails to serve the objectives of sentencing under § 3553(a), we will remand

32

to give the district court an opportunity to indicate whether it would have imposed a non-Guidelines sentence knowing that it had discretion to deviate from the Guidelines to serve those objectives." Id. at 149.[9]

      d.      The Need to Vacate and Remand Jones's Case for Resentencing

Because Jones specifically argued in the district court that application of the Guidelines' powder/crack disparity would result in a sentence greater than necessary to serve the objectives of § 3553(a) in his case, his procedural challenge to the mandatory application of these Guidelines is preserved for appeal, so that our review is not limited to plain error as in Regalado. See id. at 148-49. Having carefully reviewed the sentencing record, we find it ambiguous in revealing the error charged by Jones. On the one hand, the district court's statement that the Guidelines' "harsh[]" treatment of crack offenses is "what it is, and I think the Court in general is wise to follow that directive and not substitute its own view," Sentencing Tr. at 20-21, might be construed to accord an impermissible presumption of reasonableness to the Guidelines sentencing range, see Gall v. United States, 128 S. Ct. at 596-97, and to overlook the court's discretion to reject the 100:1 ratio as a fair measure of the seriousness of Jones's offense, see Kimbrough v. United States, 128 S. Ct. at 575. On

---

[9] Where a defendant sentenced pursuant to the former crack Guidelines has waived his right to appeal, neither Kimbrough, Regalado, nor the amended Guidelines "constitute grounds for finding [that] appeal waiver unenforceable." United States v. Lee, 523 F.3d 107, 107 (2d Cir. 2008). We had no occasion in Lee to consider such a defendant's ability to file a motion in the district court pursuant to 18 U.S.C. § 3582(c)(2) for a reduced sentence in light of the retroactive 2007 amendments.

the other hand, ensuing statements could be construed to indicate the district court's independent assessment that, in Jones's case, a Guidelines sentence best served the objectives of § 3553(a): the court detailed various harms attributable to crack; it noted the defendant's history of drug abuse; and it expressed particular concern at his demonstrated recidivism. It then concluded "all of this suggests that a guideline sentence is appropriate in this case." Sentencing Tr. at 21.

The fact that the record is somewhat ambiguous as to the district court's understanding of the presumption limitation identified in Rita and Gall and the variance discretion recognized in Kimbrough is not surprising given that the district judge sentenced Jones without the benefit of these decisions. Any confusion on these points would be understandable given that prior to Kimbrough and Gall, a number of courts, our own included, misapprehended the scope of a district court's authority to reject the Guidelines 100:1 ratio as an accurate measure of the seriousness of a particular crack offense. See United States v. Castillo, 460 F.3d at 361; see also id. at 353 (noting that, even after Booker, a number of district courts, "while expressing discomfort or dismay about the heightened sentences for crack offenses," reasonably concluded "that it was up to Congress to set sentencing policy and that they could not deem this disparity 'unwarranted' within the meaning of the federal sentencing statute, given Congress's repeated refusal to approve a lower ratio"); United States v. Eura, 440 F.3d 625, 633 (4th Cir. 2006) ("[I]t simply would go against two explicit Congressional directives to allow sentencing courts to treat crack

34

cocaine dealers on the same, or some different judicially-imposed, plane as powder cocaine dealers."); United States v. Pho, 433 F.3d 53, 63 (1st Cir. 2006) ("[T]he district court's categorical rejection of the 100:1 ratio impermissibly usurps Congress's judgment about the proper sentencing policy for cocaine offenses."). Thus, while we generally assume a district court's understanding of its various sentencing options, in the somewhat "unusual circumstances" of this case, where the district court's explanation for its decision to impose a Guidelines sentence is ambiguous as to its understanding of an area of law only recently clarified by the Supreme Court, we conclude that justice is best served by vacating Jones's sentence and remanding his case for further proceedings consistent with Kimbrough and Gall. Cf. United States v. Regalado, 518 F.3d at 148 (holding that "unusual circumstances surrounding application of the crack Guidelines in [this] Circuit after Booker and before Castillo justify a narrow and limited exception to our general rule that sentencing courts are presumed to know and follow the applicable sentencing law"); see United States v. Thorpe, 191 F.3d 339, 342-44 (2d Cir. 1999) (ordering that sentence be vacated and case remanded where judge's sentencing remarks evidenced ambiguity as to correct understanding of available sentencing option).

In deciding to remand, we are mindful that to secure the objectives of § 3553(a), district courts, no less than the Sentencing Commission, must fully exercise their proper sentencing authority. See Rita v. United States, 127 S. Ct. at 2463 ("[T]he sentencing statutes envision both the sentencing judge and the Commission as carrying out the same

35

basic § 3553(a) objectives, the one, at retail, the other at wholesale."). While the Commission has "the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise," Kimbrough v. United States, 128 S. Ct. at 574 (internal quotation marks omitted), the district court has the singular advantage of actual and extensive sentencing experience, see Gall v. United States, 128 S. Ct. at 598. Moreover, the district judge "has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." Rita v. United States, 127 S. Ct. at 2469. For this reason, it is the district court's particular trust to ensure the "uniform and constant" principle of the federal sentencing tradition, specifically, that "every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. at 113. Consistent with this district court duty, Congress has long decreed that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; see United States v. Eberhard, 525 F.3d at 177; United States v. Watts, 519 U.S. at 152; United States v. Concepcion, 983 F.2d at 387. Thus, just as we may not bar a district court from considering facts simply because they were also considered by the Commission, see Kimbrough v. United States, 128 S. Ct. at 558, the district court "may not presume" the

36

reasonableness of the Commission's Guidelines sentencing ranges, see Gall v. United States, 128 S. Ct. at 596-97. Rather, in every case, the district court "must make an individualized assessment" of the appropriate sentence "based on the facts presented" and the factors detailed in § 3553(a). Id. at 597.

In remanding this case to ensure that Jones's sentence is informed by such an individualized assessment, we signal no criticism of the able and conscientious district judge. Nor do we express any view as to what sentence Jones should receive on remand or whether it should fall within or outside his Guidelines range. On remand, the district judge will be in the best position to choose among all available sentencing options and to state with a clarity hopefully facilitated by Kimbrough and Gall the reasons for the option he chooses. See United States v. Thorpe, 191 F.3d at 344. Our decision to remand is further reinforced by the fact that the Guidelines applicable to Jones's offense have been retroactively amended in his favor while his case was on appeal. See United States v. Vazquez, 53 F.3d 1216, 1228 (11th Cir. 1995) (holding that where applicable Guidelines are retroactively amended while defendant's sentence is on appeal, case should be "remanded to the district court to determine in its discretion whether or not an adjustment was warranted in light of an ameliorative amendment"); United States v. Connell, 960 F.2d 191, 197 (1st Cir. 1992) (ordering remand because "[w]hen, after a defendant has been sentenced, a guideline amendment occurs under circumstances in which the defendant becomes eligible for, but not automatically entitled to, a reduced sentence, we think it is preferable that the matter of sentence reduction be

considered in the first instance by the sentencing court, not by an appellate court").

**III.   Conclusion**

To summarize, we conclude that (1) the trial evidence was sufficient to support the jury's guilty verdict on the crack possession count of conviction; (2) the district court did not miscalculate Jones's Guidelines range by including within the relevant drug quantity an amount of crack that Jones could have sold for the cash seized at the time of his arrest; and (3) ambiguities in the sentencing record respecting the district court's understanding of its authority not to follow the Guidelines 100:1 ratio in determining the seriousness of Jones's crack offense warrant a plenary remand so that the court can resentence the defendant consistent with this opinion and those of the Supreme Court in Kimbrough v. United States and Gall v. United States, and with due regard for recent retroactive changes to the applicable Sentencing Guidelines.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.