*United States v. Cedano*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21ˢᵗ day of December, two thousand twenty-three.

PRESENT:

> GUIDO CALABRESI,
> RICHARD J. SULLIVAN,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                No. 22-2983

BROWNSWELL CEDANO, a.k.a. "J,"

> *Defendant-Appellant.*\*

_____

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Defendant-Appellant:     JEREMIAH DONOVAN, Old Saybrook, CT.

For Appellee:     NATHANAEL T. BURRIS (Joseph R. Perella, Gregory L. Waples, *on the brief*), Assistant United States Attorneys, *for* Nikolas P. Kerest, United States Attorney for the District of Vermont, Burlington, VT.

Appeal from a judgment of the United States District Court for the District of Vermont (Geoffrey W. Crawford, *Chief Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Brownswell Cedano appeals from a judgment following his guilty plea to knowingly possessing with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C), for which he received a sentence of eighty-four months' imprisonment, to be followed by three years' supervised release. On appeal, Cedano argues that the district court made two errors in calculating his sentencing range under the advisory Sentencing Guidelines. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. Drug Quantity

Cedano argues that the district court erred in calculating the quantity of narcotics attributable to him as relevant conduct under the Guidelines. After reviewing the presentence investigation report ("PSR") prepared by the Probation Office and conducting a sentencing hearing at which two coconspirators testified, the district court concluded that Cedano was responsible for the distribution of various quantities of cocaine base, cocaine powder, heroin, and fentanyl, which resulted in a base offense level of 30. On appeal, Cedano primarily asserts that the district court should not have considered certain statements by his coconspirators and associates in determining drug weight because such statements were unreliable. We disagree.

We review a district court's factual findings as to the quantity of narcotics involved in an offense for clear error. *See United States v. Richards*, 302 F.3d 58, 68 (2d Cir. 2002). In applying this "extremely deferential standard of review," our role is "not to decide disputed factual issues *de novo* or to reverse simply if we would have decided the case differently, but rather to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety." *United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003). In cases "where

3

the quantity [of drugs] seized does not reflect the true scale of the offense," the district court's estimation of the amount of drugs involved need only be established by "a preponderance of the evidence." *United States v. Jones*, 531 F.3d 163, 175 (2d Cir. 2008); *see also United States v. McLean*, 287 F.3d 127, 133 (2d Cir. 2002). "[I]f the evidence – direct or circumstantial – supports a district court's preponderance determination as to drug quantity, we must sustain that finding." *Jones*, 531 F.3d at 175.

Here, the district court carefully considered the grand jury testimony and witness statements to law enforcement detailed in the PSR, as well as live testimony offered at the sentencing hearing, and calculated the applicable drug weight only from evidence that it found to be credible. After scrupulously reviewing the PSR and holding a lengthy hearing, the district court rejected Megan Blake's estimates as to drug quantity in their entirety, finding her statements to be "highly improbable" and "inconsistent with everything else that [the court] kn[e]w about this case." App'x at 175. The district court then concluded that the remaining witnesses' estimates of drug weight were credible and reasonable in light of other evidence in the record, which included several exhibits – such as photographs, cellphone records, and text messages – presented by the government

in the course of the hearing. And, contrary to Cedano's contention, the witness statements contained in the PSR – including those regarding the amount of cocaine base that Cedano passed to Jasmine Wendell while in a patrol car – did not materially contradict testimony given before the grand jury or at the hearing; instead, these accounts generally corroborated one another. We therefore have no reason to second-guess the district court's careful assessment of the evidence or its conclusion as to the aggregate drug weight attributable to Cedano. *See United States v. Zagari*, 111 F.3d 307, 330 (2d Cir. 1997) ("The sentencing court is entitled to broad discretion in resolving disputed factual issues, including an assessment of the credibility of witnesses.").

If anything, the drug quantities set forth in the PSR and adopted by the district court understated the drug quantities in Cedano's favor. As an initial matter, the district court applied a one-to-one ratio of crack to powder cocaine when calculating the total converted drug weight attributable to Cedano. This downward variance led to a significant reduction in the applicable Guidelines range, from 151–188 months' imprisonment to 84–105 months' imprisonment. The district court then sentenced Cedano to 84 months' imprisonment, at the very bottom of the range.

5

The district court also declined to ascribe *any* drug quantities to certain conduct, such as several purported trips that Cedano made to Stephen Smith's house to sell drugs and the trafficking that Heidi Hutchins did on Cedano's behalf. Moreover, the drug quantities set forth in the PSR reflected low-end estimates of the amounts that Rashane Wedderburn and Alicia Parenteau claimed were attributable to Cedano.[1] Nor is there any support for Cedano's suggestion that the PSR may have "double counted" drugs. Cedano Br. at 18. Indeed, each witness claimed to have been involved with Cedano during a distinct timeframe: Wedderburn from approximately August to November 2020, Parenteau from July to October 2019, and Seanna Kelley from September 2019 to February 2020. And to the extent that Parenteau's and Kelley's involvement briefly overlapped, there was no risk of double counting because Parenteau's statements related to cocaine base, while Kelley's statements related to heroin.

---

[1] Cedano argues that Wedderburn's testimony was too vague to allow the district court to reasonably estimate any drug quantities properly attributable to him, that the amount of cocaine base stemming from Parenteau's statements was overstated by one ounce, and that the district court should not have included the full weight of drugs seized during the November 18, 2020 search of Smith's residence in its calculation. But even if we were to accept all of these contentions, we would conclude that the inclusion of these drug weights was harmless because Cedano's sentencing range would have been the same absent these challenged amounts. *See United States v. Cimino*, 639 F. App'x 26, 29 n.3 (2d Cir. 2016); *United States v. Colabatistto*, 762 F. App'x 38, 42 (2d Cir. 2019).

6

For all these reasons, we cannot say that the district court clearly erred in determining the quantity of drugs properly attributable to Cedano.

## II. Enhancement for Use of Violence

Cedano argues that the district court clearly erred in applying a two-level upward adjustment for his role in the assault of Hutchins. Specifically, Cedano asserts that the evidence was insufficient to establish that he "used violence, made a credible threat to use violence, or directed the use of violence" in connection with his offense of conviction. U.S.S.G. § 2D1.1(b)(2). Again, we disagree.

We review for clear error a district court's factual findings as to whether a defendant's conduct gives rise to the use-of-violence enhancement under U.S.S.G. § 2D1.1(b)(2). *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 82–83 (2d Cir. 2018). We will uphold the district court's finding unless "we are left with the definite and firm conviction that a mistake has been committed." *United States v. Ramirez*, 609 F.3d 495, 503 (2d Cir. 2010) (internal quotation marks omitted).

Here, the evidence adequately supported the district court's finding that the use-of-violence enhancement applied. When testifying before the grand jury, Hutchins stated that Cedano and his codefendant Ralph Mariani came to her hotel room to insist that she sell heroin and cocaine base on their behalf. She testified

7

that, when she refused, Mariani threatened to kill her and then punched and kicked her while Cedano was still in the room. Smith, Hutchins's boyfriend at the time who also testified before the grand jury, stated that he witnessed *both* Mariani and Cedano assault Hutchins by punching and slapping her. Although Smith could not recall that fact when he testified at the sentencing hearing more than twenty months later, he conclusively testified that Cedano was "[a]bout an arm length's away" from Hutchins when the assault occurred. App'x at 71.

On this record, it was not unreasonable for the district court to conclude that Mariani and Cedano confronted Hutchins to "persuade her to go back into the business of selling drugs for them" and that Cedano "played his part" in the violence by confronting her "in an aggressive manner." *Id.* at 191–92. The record evidence indicates that Cedano entered Hutchins's hotel room with Mariani, demanded that she sell drugs, remained in close proximity to her during the assault, and possibly even assaulted her himself. Cedano's contention that Mariani "was the boss" in the situation, Cedano Br. at 27, is irrelevant, since the enhancement only requires the defendant's involvement in the assault, not a leadership role. We therefore reject Cedano's argument that the district court clearly erred in applying the two-level upward adjustment.

8

\* \* \*

We have considered Cedano's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk of Court